J-S41004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTOINE WILLIAM McNEAL | : | |
| | : | |
| Appellant | : | No. 1828 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 25, 2019,
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s): CP-40-CR-0001933-2017.

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.:           **FILED NOVEMBER 17, 2020**

Antoine William McNeal appeals from the judgment of sentence of 22 years and 4 months to 44 years and 8 months' incarceration, after a jury convicted him of murder of the third degree, criminal use of a communication facility, tampering with or fabricating physical evidence, and robbery.[1]  The Pennsylvania State Police identified McNeal as a suspect in the shooting death of Brandon Smith by searching McNeal's cell phone without a warrant.  The suppression court held that McNeal lacked standing to move for suppression. Because McNeal left a crucial portion of his appellate argument against the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2501(a), 18 Pa.C.S.A. § 7512(a), 18 Pa.C.S.A. § 4910(1), and 18 Pa.C.S.A. § 3701(a)(1)(i).

suppression court's standing determination undeveloped, we must dismiss that sub-issue as waived and affirm the denial of suppression.

Around 1:00 a.m. on January 18, 2017, Brandon Smith, who was at home with his mother, began texting someone on his flip phone. Mr. Smith had not saved the name of the other text messenger in his flip phone, so the text chain only displayed the other person's number - (570) 417-6088. *See* N.T., 11/26/18, at 10.

They texted back and forth for about an hour. Mr. Smith and the other text messenger arranged a drug deal. They discussed price and quantity, and eventually Mr. Smith gave the other person his address. At 2:00 a.m., Mr. Smith went outside to his family's van to consummate the sale, but he returned to the house bleeding from bullet wounds. He died in the hospital shortly thereafter.

While investigating the van where the shooting occurred, Pennsylvania State Police discovered and seized two cell phones. One was a damaged LG phone that belonged to Mr. Smith. The other was a Samsung Galaxy 5S, which Mr. Smith's family could not identify. Mr. Smith's family also turned over Mr. Smith's flip phone. The police took all three phones as evidence, and they powered them down.

The police obtained a search warrant for the data records of the phone company for (570) 417-6088, the number with which Mr. Smith had been texting on his flip phone. The metadata revealed that the phone belonging to that number had been near the murder scene, someone had powered that

phone down, and the owner of that account had changed the number to (570) 574-4534. The phone company continued providing police with data about the new number and informed them that Wakeelah Moore had called (570) 417-6088 several times after the shooting.

Police met with Ms. Moore. She told them that the two numbers on which they were collecting data belonged to her boyfriend, Antoine McNeal. At this point, the police still did not know the owner of the Samsung Galaxy 5S. *See* N.T., 11/26/18, at 28-30. Next, the police returned to their barracks with a theory that its owner might be McNeal and that it could tie him to the crime. In their evidence room, they powered on the Galaxy 5S and dialed (570) 574-4534 from their landline. It rang and displayed the number for the barracks' evidence room. The police then used this information to obtain a search warrant for other data in the Galaxy 5S.

They arrested McNeal for the murder of Mr. Smith and other crimes.

McNeal moved to suppress the evidence that investigators had obtained from their warrantless search of his phone under the Fourth Amendment to the Constitution of the United States and Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania. A week later, the Commonwealth filed a brief opposing that motion. It asserted (1) dialing (570) 574-4534 from the evidence room was not a search; (2) McNeil had no expectation of privacy in his phone number and he abandoned his phone, thereby forfeiting any standing in this case; and (3) discovery of the evidence was inevitable. *See* 3/12/18 Brief in Opposition to Defendant's Motion to Suppress.

Eight months later, the suppression court conducted a hearing on the motion. The Commonwealth called one witness: Pennsylvania State Trooper Edward Urban, who investigated the homicide. McNeal presented no evidence and called no witnesses. The suppression court accepted the Commonwealth's legal theories and denied the motion to suppress. The case proceeded to a jury, which convicted McNeal, and the common pleas court sentenced him as described above.

This timely appeal followed.

McNeal raises one issue. He asks whether the suppression court erred or abused its discretion in failing to suppress the search of his Galaxy 5S and all evidence connected thereto. *See* McNeal's Brief at 4.

In his argument, McNeal he presents three sub-issues. First, he asserts he did not abandon his phone in Mr. Smith's van and therefore has standing to bring his motion to suppress. Second, he avers that turning on and calling his Galaxy 5S from the evidence room were searches. And third, he argues that the inevitable-discovery doctrine does not apply. His sub-issues present pure questions of constitutional law, for which "our scope of review is plenary, and the standard of review is *de novo*." ***Commonwealth v. Walker***, 185 A.3d 969, 974 (Pa. 2018).

As mentioned above, the suppression court ruled that McNeal lacked standing to challenge the police conduct at issue. The court deemed the Samsung Galaxy 5S abandoned property, in which McNeal had no legitimate privacy interest that society was prepared to recognize as reasonable for

purposes of constitutional law. McNeal challenges that determination on appeal.

The Fourth Amendment and Article I, § 8 only provide their protections from unreasonable searches and seizures to items that, at the time of the search or seizure, remain within a zone of privacy that the two constitutions are willing to shield from the government's view. If the item seized or search is outside that zone of privacy, then the defendant lacks standing to challenge a search or seizure of it. *See*, *e.g.*, *Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa. Super. 2019) (holding that a smartphone deliberately hidden inside a dormitory bathroom to video the people therein was "abandoned property" for constitutional purposes).

The burden is on the defendant to establish that he has standing to raise a constitutional objection to police procedures. To do so, "a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership, or possessory interest." *Commonwealth v. Dowds*, 761 A.2d 1125, 1131 (Pa. 2000). The legitimate-expectation-of-privacy test "is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361, (1967) (Harlan, J. concurring); *Commonwealth v. Lowery*, 451 A.2d 245, 247 (Pa. Super. 1982) (accord).

McNeal draws upon several facts to demonstrate that, subjectively, he believed the Galaxy 5S was still his private phone, even after the police seized it. He indicates that there is no evidence of record showing that he either intentionally left his cell phone behind or that he denied ownership of it. *See* McNeal's Brief at 25. Based on his girlfriend's testimony at trial, McNeal claims that she advised the troopers "that her phone had indeed been used to call the Samsung Galaxy phone, after the shooting, in an attempt to locate [the Galaxy 5S]." *Id.* at 26. He then further relies upon Ms. Moore's trial testimony that she and McNeal returned to the crime scene to look for the Galaxy 5S, but they could not find it. *See id.* Finally, McNeal emphasizes the fact that he changed the cell phone number for the Galaxy 5S shortly after the murder of Mr. Smith. McNeal believes that this evidences his intent to reclaim the cell phone, rather than simply disconnecting it from the wireless account. *See id.* at 26-27.

Even if we accepted that those facts prove McNeal had a subjective expectation of privacy in his Galaxy 5S after leaving it in the van, McNeal never asserts that his expectation of privacy is a reasonable one that society is prepared to recognize as constitutionally legitimate. He makes no argument as to why, as a matter of constitutional law, his expectation of privacy satisfies the objective portion of the *Katz* standing test. What is it about a smartphone that entitles it to enhanced protections from searches that, if accidentally forgotten at a crime scene, other evidence — like a bag of weapons — lacks? *See*, *e.g.*, *Commonwealth v. Shoatz*, 366 A.2d 1216 (Pa. 1976) (holding

- 6 -

that luggage containing weapons and other instruments of a crime abandoned when dropped in flight from the police).

Like the Supreme Court of the United States and the Supreme Court of Pennsylvania, we recognize that cell phones are highly sensitive, digital gateways into their owner's private affairs. *See Riley v. California*, 573 U.S. 373 (2014); *Commonwealth v. Fulton*, 179 A.3d 475 (Pa. 2018). Society might very well recognize McNeal's continuing expectation of privacy in his Galaxy 5S as reasonable, under the totality of these circumstances, especially given the nature of cell phones and the High Court's comparison between them and a person's home. *Riley* at 396-97. However, McNeal does not make such a claim or expound upon this objective portion of the two-fold standing test. By addressing only the subjective part and not the objective part of his standing argument McNeal only developed his sub-issue on standing halfway.

The Pennsylvania Rules of Appellate Procedure and the precedents of this Court require us to dismiss underdeveloped arguments as waived. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Id.* Due to McNeal's failure to address the objective prong of the *Katz* test, we cannot decide the merits of his constitutional claim that he has standing, without also supplying him with the second half of his argument on this sub-issue. This we may not do. *See Ramsden*, *supra*. Instead, we must dismiss this first sub-issue as waived.

Because McNeal has waived his appellate sub-issue on standing, his other two sub-issues are now moot. As such, we dismiss them as well.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2020